IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT SALCETTI,<br>Plaintiff,<br><br>v.<br><br>AIG PROPERTY CASUALTY<br>COMPANY,<br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. H-19-1184 |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion for Summary Judgment ("AIG's Motion") [Doc. # 11] filed by Defendant AIG Property Casualty Company ("AIG"), to which Plaintiff Robert Salcetti filed a Response and Cross-Motion for Summary Judgment ("Salcetti's Motion") [Doc. # 14]. AIG filed a Reply in support of its own Motion and a Response to Salcetti's Motion [Doc. # 17], and Salcetti filed a Reply [Doc. # 18]. For the reasons explained below, the Court **denies** both motions as premature.

### I. BACKGROUND

Salcetti owns a home in Houston, Texas, that is insured by an AIG homeowner's policy (the "Policy"). In late August 2017, Hurricane Harvey stalled over Houston, causing significant rainfall throughout the area. Salcetti alleges that the U.S. Army Corps of Engineers decided to release water from the Addicks and Barker

Reservoirs, and that this water entered his home causing significant damage. *See* Original Petition [Doc. # 1-4], ¶ 10.

Salcetti filed a claim with AIG for the damage to his home. He alleges that the cost to repair items in his home that were damaged was $2,524,250.00, and that he has received $1,000,000.00 from other insurance. *See id.*, ¶ 14. After AIG denied the claim, Salcetti filed this lawsuit seeking to recover the remainder from AIG. Salcetti also seeks extra-contractual damages.

At the initial conference before this Court on July 29, 2019, the parties advised that they would like to file pre-discovery motions for summary judgment and represented that the motions would be based on an agreed Stipulation of Facts. On that basis, the Court allowed the early motions and imposed a briefing schedule. *See* Hearing Minutes and Order [Doc. # 8]. Although the parties were not able to reach agreement on a Stipulation of Facts, they each filed a motion for summary judgment. The pending motions have been fully briefed and are now ripe for decision.

## II. APPLICABLE LEGAL STANDARDS

### A. Summary Judgment Standard

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions in the record, together with any affidavits filed in support of the motion, demonstrate that there is no genuine issue as to any material

fact, and that the moving party is entitled to judgment as a matter of law.  *See* FED. R.
CIV. P. 56(a); *Bacharach v. Suntrust Mortg., Inc.*, 827 F.3d 432, 434 (5th Cir. 2016).
The Court construes all facts and *considers all evidence* in the light most favorable to
the nonmoving party.  *See Guar. Bank & Trust Co. v. Agrex, Inc.*, 820 F.3d 790, 794
(5th Cir. 2016) (emphasis added).

      **B.**      <u>**Standard for Insurance Policies**</u>

Under Texas law, the meaning of an insurance contract is to be determined under the standards applicable to contracts generally.  *See One Beacon Ins. Co. v. Crowley Marine Servs.*, 648 F.3d 258, 271 (5th Cir. 2011); *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000); *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987).  A court's primary concern is to give effect to the intention of the parties as expressed by the policy language.  *Am. Nat. Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001) (citing *Ideal Lease Serv., Inc. v. Amoco Prod. Co.,* 662 S.W.2d 951, 953 (Tex. 1983)).

**III.**    <u>**ANALYSIS**</u>

AIG argues that two exclusions in the Policy apply to Salcetti's claim. Specifically, AIG argues that the "Confiscation" exclusion and the "Surface and Ground Water Damage" exclusion apply.  Because they are exclusions to Policy coverage, AIG has the burden to prove that they govern in the dispute.  *John M.*

*O'Quinn, P.C. v. Lexington Ins. Co.*, 906 F.3d 363, 367 (5th Cir. 2018) ("The insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of proving the applicability of any exclusions in the policy.").

### A. "Confiscation" Exclusion

The "Confiscation" exclusion excludes coverage for "any loss caused by the destruction, confiscation or seizure by any government or public authority." Policy, Exh. A to AIG's Motion, App. 17, ¶ 18. It is undisputed that the Army Corps of Engineers is a government authority. Additionally, neither party argues that Salcetti's loss was caused by a governmental confiscation or seizure. Instead, AIG argues that Salcetti's loss was caused by the "destruction" of his property by the Army Corps of Engineers.

Salcetti responds that his home was not destroyed but, instead, suffered water damage. There is no evidence in the record regarding the scope or type(s) of damage to Salcetti's home, and no evidence regarding whether Salcetti's insurance claim to AIG included items that were destroyed and needed to be replaced. Therefore, there is no evidence in the record to determine whether any element of Salcetti's loss was caused by that element's destruction due to the actions of the Army Corps of Engineers.

Salcetti argues also that the destruction must have been intentional, relying on cases involving governmental confiscations and governmental seizures. *See* Salcetti's Motion, pp. 6-7. AIG disagrees that the destruction must have been intended, but asks the Court to take judicial notice of news releases issued by the Army Corps of Engineers as evidence of intent. *See* AIG Motion, p. 10. The Court denies the request for judicial notice of news releases,[1] and there is an insufficient evidentiary record to determine the Army Corps of Engineers' intent when releasing water from the Reservoirs.

The parties failed to stipulate to the relevant facts, and there is no evidence in the record from which the Court can conduct a proper summary judgment analysis. As a result, summary judgment on the applicability of the "Confiscation" exclusion is denied.

    **B.**     <u>**"Surface and Ground Water Damage" Exclusion**</u>

The "Surface and Ground Water Damage" exclusion provides that the Policy does not cover "any loss caused by flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by rain . . .."

---

[1] "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b).

Policy, App. 16, ¶ 6. An endorsement to the Policy defines "flood" to mean, in relevant part:

1. A general and temporary condition of partial or complete inundation of normally dry land area from:
   a. Overflow of inland or tidal waters; [or]
   b. Unusual and rapid accumulation or runoff of surface waters from any source.

*Id.*, App. 53.

AIG argues that Hurricane Harvey produced heavy rainfall throughout the Houston area, and that the "rain water that eventually found its way to Salcetti's Property is that which was in the Reservoirs and/or Buffalo Bayou." *See* AIG's Motion, p. 9. AIG argues that some of the rain water fell outside the Reservoirs as "surface water." AIG argues that other rain water fell or drained into Mason Creek, South Mayde Creek, Langham Creek, Bear Creek, Horsepen Creek, and Upper Buffalo Bayou. Although AIG asks the Court to take judicial notice that these creeks and the upper Buffalo Bayou feed into the Reservoirs, AIG cites nothing to support judicially noticing this fact. AIG argues that the Reservoirs and Buffalo Bayou are "natural watercourses" and that the water from the Reservoirs, upon its release, flowed into Buffalo Bayou and "immediately became Buffalo Bayou water." *See id.* at 12. In support of its position that the water from the Reservoirs was released into Buffalo Bayou, AIG cites to Salcetti's unsworn allegation in the Original Petition that the

Army Corps of Engineers released water from the Reservoirs "thereby inundating Buffalo Bayou downstream." *See id.*, citing Original Petition, ¶ 10. Salcetti now alleges, however, that the water in the Reservoirs was "impounded water" that, when released, did not flow into Buffalo Bayou because the bayou "was full and already outside its banks at the time of the release . . .." *See* Salcetti's Motion, p. 10. Although Salcetti has not filed an amended complaint making the new allegation, the Court has not entered a docket control order for the case. Therefore, the deadline for amendments to pleadings has not yet been established and Salcetti is entitled to assert this new theory of his claim.

There is no evidence in the record to support either side's position. For example, there is no evidence that the water in the Reservoirs came from the creeks identified by AIG, that the water in the Reservoirs was "impounded water" as Salcetti argues, or that the water in the Reservoirs (whatever its character) went into Buffalo Bayou when it was released by the Army Corps of Engineers. Because there is no evidence on which to base a summary judgment analysis, the Court denies both motions as to the "Surface and Ground Water Damage" exclusion.

## IV. <u>CONCLUSION AND ORDER</u>

The Court allowed pre-discovery motions for summary judgment based on the parties' expectation that they would support their motions with an agreed Stipulation

of Facts. The parties were unable to agree on a Stipulation of Facts, and the limited evidence currently before the Court provides an insufficient basis for summary judgment. As a result, it is hereby

**ORDERED** that the Motions for Summary Judgment [Docs. # 11 and # 14] are **DENIED without prejudice** as premature. It is further

**ORDERED** that counsel shall appear before the Court on **December 4, 2019 at 2:00 p.m.** for a scheduling conference.

SIGNED at Houston, Texas, this **15th** day of **November, 2019**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE